IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

M-EDGE ACCESSORIES LLC,          *

                Plaintiff          *

          vs.                *    CIVIL ACTION NO. MJG-11-3332

AMAZON.COM INC.                  *

            Defendant          *

*        *        *        *        *        *        *        *        *

<u>MEMORANDUM AND ORDER: MOTION TO DISMISS</u>

The Court has before it Defendant's Motion to Dismiss
[Document 36] and the materials submitted relating thereto.  The
Court has held a hearing and has had the benefit of the
arguments of counsel.


I.    <u>BACKGROUND</u>[1]

Plaintiff, M-Edge Accessories LLC ("M-Edge"), is a Maryland
company based in Odenton, Maryland, that creates accessories for
mobile electronic devices such as e-book readers and tablet
computers.  Defendant, Amazon.com, Inc. ("Amazon"), is a
Delaware corporation based in Seattle, Washington that offers
online shopping for a wide variety of goods, most of which are

---

[1] The "facts" herein are as alleged by Plaintiff and are not
necessarily agreed upon by Defendants.

produced by others, through its highly successful internet website www.amazon.com ("the Website").

In or about 2008, Amazon began producing the Kindle e-book reader and selling these on the Website.  In 2008, M-Edge began manufacturing a protective jacket for the Kindle and sold it through the Website.  The M-Edge jacket sold so well that M-Edge became a "special partner" with Amazon, receiving prelaunch information about new Kindle versions.  M-Edge also created an integrated book light for the protective cover of an e-book reader and, on November 1, 2011, obtained United States Patent No. 8,047,670 ("the '670 Patent") covering certain features of the device.  However, M-Edge was not, and is not, the only supplier of Kindle accessories sold on the Website.

In the course of their relationship, M-Edge and Amazon-related entities entered into various agreements.  M-Edge alleges that during these agreement negotiations, Amazon executives regularly made threats in order to get larger percentages of M-Edge's sales.  For example, M-Edge alleges that during these negotiations, Amazon executives threatened to de-list the M-Edge products and to deny pre-launch access to new Kindle versions.

In mid-2010, Amazon launched a new Kindle version, giving only one day of notice to M-Edge.  Hence, M-Edge was not able to

produce accessories for the new version for sale promptly after it was launched.  Amazon, however, immediately commenced selling accessories that were M-Edge "knock-offs," including the "Amazon Kindle Lighted Leather Cover," which M-Edge asserts infringes M-Edge's '670 patent.

Amazon created a Preferred Vendor Program to which M-Edge could join only if it agreed to pay Amazon a portion of its proceeds from sales to M-Edge's "customers."[2]  Amazon threatened M-Edge with adverse consequences if it refused to agree to make the payments and carried out its threats when M-Edge refused. For example, Amazon circulated to M-Edge's customers and potential customers a list of "Amazon Approved Accessory Vendors" that did not include M-Edge.  Amazon also discouraged M-Edge's customers from dealing with M-Edge, and in some cases, threatened these customers with repercussions if they persisted in dealing in M-Edge Kindle accessory products.  As a result, several customers ceased dealing with M-Edge and at least fourteen potential customers were dissuaded from entering into agreements with M-Edge.

Amazon sent email communications to M-Edge indicating that M-Edge was no longer an approved, or preferred, Kindle

---

[2] The term "customers" is used herein to refer to companies that obtained products from M-Edge and resold the products to the ultimate consumers.

accessories manufacturer.  However, Amazon continued to display

M-Edge products on its Website, representing to potential

consumers that the M-Edge products were "currently unavailable"

together with displays reflecting the availability of competing

items, including Amazon "knock-off" products.

In the Second Amended Complaint, M-Edge presents claims in

four counts:

- Count I – Patent Infringement
- Count II – Unfair Competition
- Count III – Intentional Interference with Contracts
  and Economic Relations
- Count IV – Lanham Act – False Advertising

By the instant motion, Amazon seeks dismissal of all claims

in Counts II, III, and IV pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.[3]


II.  LEGAL STANDARD

A motion to dismiss filed pursuant to Rule 12(b)(6) tests

the legal sufficiency of a complaint.  A complaint need only

contain "a short and plain statement of the claim showing that

the pleader is entitled to relief, in order to give the

defendant fair notice of what the ... claim is and the grounds

---

[3] All Rule references herein refer to the Federal Rules of Civil
Procedure unless otherwise indicated.

upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff. However, conclusory statements or a "formulaic recitation of the elements of a cause of action" will not suffice. Id. A complaint must allege sufficient facts to "cross 'the line between possibility and plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Thus, if the well-pleaded facts contained within a complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009))(internal quotation marks omitted).

III.  <u>DISCUSSION</u>

    A.   <u>Choice of Law – State Law Claims</u>

    Amazon contends that the law claims in Counts II and III arise out of, and relate to, a November 2009 contract ("the Agreement") between M-Edge and Amazon Services LLC, an Amazon-related entity that was, but no longer is, a party to the instant case.  Within the Agreement is a choice-of-law and forum selection clause, providing:

> This Agreement will be governed by the Laws of the State of Delaware, without reference to its choice of Laws rules. Each Party agrees that any legal proceedings brought by it arising out of or relating to this Agreement will be brought in the state courts of the county in which the other Party's corporate headquarters are located or the United States District Court for the District in which the other Party's corporate headquarters are located.

    Mot. 9, ECF No. 36-1.

    The Court will assume for present purposes that Amazon – although not a signatory to the Agreement – can hold M-Edge bound by the choice of law provision therein.  Nevertheless, the Agreement provides for the application of Delaware law to the contract itself and not to related tort claims.  This is in sharp distinction to the choice of forum scope, in the same paragraph, which extends to any legal proceedings "arising out of or related to this Agreement."  Accordingly, the tort claims

presented in Count II and III are not governed by Delaware law.
See Superior Bank, F.S.B. v. Tandem Nat. Mortg., Inc., 197 F.
Supp. 2d 298, 309 (D. Md. 2000).

Amazon contends that, if Delaware law is not applicable to
the tort claims, then Washington state law would apply.

In regard to state law claims, a federal district court
must apply the choice-of-law rules of the state in which it
sits. See Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97
(1941); see also ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42,
49 n.11 (4th Cir. 1983)(holding that a district court
entertaining supplemental state-law claims should follow the
choice-of-law rules of the forum state).

As to tort claims, Maryland applies the law of the state
where the alleged harm occurred ("lex loci delicti commissi"),
see, e.g., Ground Zero Museum Workshop v. Wilson, 813 F. Supp.
2d 678, 696 (D. Md. 2011).  "The rule is fairly easy to apply
when all of the events giving rise to a suit have occurred in
one state . . . .  The more difficult situation arises when the
events giving rise to a suit occur in a number of states."
Philip Morris Inc. v. Angeletti, 752 A.2d 200, 231 (Md. 2000).
"As a general rule, the place of the tort is considered to be
the place of injury."  Id.

If the events that give rise to a tort action occur in more than one state, as here, Maryland courts "apply the law of the State where the injury — the last event required to constitute the tort — occurred." Ground Zero, 813 F. Supp. 2d at 696 (citing Lab. Corp. of Am. v. Hood, 911 A.2d 841 (Md. 2006)). The place of injury is considered to be the place where the last act required to complete the tort occurred. See Restatement (First) of Conflict of Laws § 377 (1934) (stating that the "place of wrong is the state where the last event necessary to make an actor liable for an alleged tort takes place").

Amazon contends that M-Edge has not alleged any tortious acts committed in Maryland but only such acts committed by Amazon in other states. Amazon misconstrues lex loci delicti. The Restatement (First) of Conflict of Laws § 377 states that, generally, the place of injury is considered to be the place where the actual damage occurs, even if the conduct resulting in the injury occurred in another state. See Restatement (First) of Conflict of Laws § 377; see also Johnson v. Oroweat Foods Co., 785 F.3d 503, 511 (4th Cir. 1986)(applying Maryland law, the court explained that "the law of the place of injury applies. The place of injury is the place where the injury was suffered, not where the wrongful act took place."). In the instant case, as alleged by M-Edge, the injury or damage

occurred in Maryland. <u>See, e.g.</u>, Second Am. Compl. ¶¶ 5, 31, 33, 37.

Therefore, Maryland law governs the state-law tort claims.


B.    <u>COUNT II - Unfair Competition</u>

In <u>Baltimore Bedding Corp. v. Moses</u>, 34 A.2d 338, 342 (Md. 1943), the Maryland Court of Appeals stated:

> [W]hile [unfair competition law] encourages
> fair trade in every way and aims to foster,
> and not to hamper, competition, no one,
> especially a trader, is justified in
> damaging or jeopardizing another's business
> by fraud, deceit, trickery or unfair methods
> of any sort.... What constitutes unfair
> competition in a given case is governed by
> its own particular facts and circumstances.
> Each case is a law unto itself, subject,
> only, to the general principle that all
> dealings must be done on the basis of common
> honesty and fairness, without taint of fraud
> or deception.

It is not necessary for a plaintiff to prove an unlawful act to establish an unfair competition claim.  <u>Trimed, Inc. v. Sherwood Med. Co.</u>, 977 F.2d 885, 891 (4th Cir. 1992)(applying Maryland law).  The essential element of unfair competition is deception – either actual or probable deception.  <u>GAI Audio of N.Y., Inc. v. Columbia Broad. Sys., Inc.</u>, 340 A.2d 736, 748 (Md. Ct. Spec. App. 1975)(citing <u>Edmondson Village Theatre v. Einbinder</u>, 116 A.2d 377, 380 (1955)). "[T]his Court has consistently delineated the parameters of this tort in a very

9

broad manner." S. Volkswagen, Inc. v. Centrix Fin., LLC, 357 F.
Supp. 2d 837, 852 (D. Md. 2005).

In the dismissal context, the Court must view the alleged
"facts" as favorably to M-Edge as reasonably possible.  On such
an assumption, the Court finds that M-Edge has alleged facts
adequate to present a plausible claim that Amazon utilized
deception unfairly to compete. See Alphamed Pharma. Corp. v.
Arriva Pharma., Inc., 391 F. Supp. 2d 1148, 1165 (S.D. Fla.
2005)(noting that allegations that representations are
misleading is sufficient at the pleading stage).  For example,
the Court must assume that a reasonable consumer could be misled
by Amazon's stating that an M-Edge product was not "currently
available" together with an offer of a competing product to mean
that the M-Edge product was not available from any source
whatsoever.  Moreover, the Court must assume that a customer
could be misled into believing that it could not sell M-Edge
Kindle accessories without Amazon approval.

Accordingly, M-Edge has alleged "facts" sufficient to
present a plausible claim that Amazon used deceit, trickery, or
unfair methods and engaged in unfair competition under Maryland
law.

C.    <u>COUNT III - Tortious Interference</u>

A party can be held liable for the tort of intentional interference with contracts and economic relations if it "interferes with and damages another in his business or occupation."  <u>Macklin v. Robert Logan Assocs.</u>, 639 A.2d 112, 117 (Md. 1994).  Inducing the breach of an existing contract is but one manifestation of the tort.  <u>Id.</u>  Where there is no contract between two parties, a third party has a broad, but not limitless, right to interfere with economic or business relations between the two parties.  <u>See id.</u>

To establish an unfair competition claim, a plaintiff must prove:

1.    Intentional and willful acts;

2.    Calculated to cause damage to the plaintiff in its lawful business;

3.    Done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and

4.    Actual damage and loss resulting.

<u>Natural Design, Inc. v. Rouse Co.</u>, 485 A.2d 663, 675 (Md. 1984).

The "types of wrongful or unlawful acts that could form the basis" for the tort include "violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil

11

suits or criminal prosecutions in bad faith." <u>Berry & Gould,</u>
<u>P.A. v. Berry</u>, 757 A.2d 108, 113 (Md. 2000).  Conduct that is
subtle rather than overt, however, can be improper or wrongful.
<u>Macklin</u>, 639 A.2d at 119.

M-Edge has alleged that Amazon contacted representatives of
third-party vendors, both existing and potential M-Edge
customers, and threatened adverse consequences for dealing with
M-Edge.  Second Am. Compl. ¶ 19, 36.  M-Edge has alleged that
Amazon's actions were intentional and willful, calculated to
cause damage, without right or justifiable cause.  <u>Id.</u> at ¶ 35.

In particular, M-Edge has alleged that Amazon threatened to
contact its customers if M-Edge did not agree to Amazon's
demands, and that Amazon deliberately sought to create an
impression that M-Edge was not "approved."  <u>Id.</u> at ¶ 17, 19.  M-
Edge also specifically alleged examples of potential customers'
refusing to deal with it after being contacted by Amazon –
stating there were at least fourteen potential customers
interfered with, including Sam's Club, a large retail chain.
<u>Id.</u> at ¶ 37.  M-Edge has also alleged that Amazon's conduct
harmed M-Edge's customer relationships.  <u>Id.</u> at ¶ 21, 22, 37.

In sum, M-Edge has made sufficient factual allegations to
present a plausible tortious interference claim.

D.   <u>COUNT IV – False Advertising (Lanham Act)</u>

The Lanham Act prohibits the "false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B).

A plaintiff asserting a false advertising claim under the Lanham Act must establish that:

   1.   The defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product;

   2.   The misrepresentation is material, in that it is likely to influence the purchasing decision;

   3.   The misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience;

   4.   The defendant placed the false or misleading statement in interstate commerce; and

   5.   The plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

<u>PBM Prods., LLC v. Mead Johnson & Co.</u>, 639 F.3d 111, 120 (4th Cir. 2011)(citing <u>Scotts Co. v. United Indus.</u>, 315 F.3d 264, 272 (4th Cir. 2002)).

Amazon contends that M-Edge has not pleaded that Amazon made any false statements because the allegations themselves establish that the statements were accurate and truthful.

In order to form the basis of a false advertising claim, the alleged offending statement must be "either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context." <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1138 (4th Cir. 1993).   M-Edge bases its false advertising claim on two types of statements:  (1) Statements to consumers in response to a search on the <u>Website</u> for M-Edge products that the M-Edge products are "currently unavailable" and (2) Statements to customers that effectively communicate that sale of a Kindle accessory requires approval from Amazon that has not been given for M-Edge products.   Second Am. Compl. ¶¶ 40, 41.

The Court finds that both types of statements might be found misleading or false by implication in context.   There is no doubt that Amazon has plausible contentions that may well ultimately defeat M-Edge's claim.   However, M-Edge has made sufficient factual allegations to present a plausible claim that consumers and/or customers could be found to have been misled by Amazon and that M=Edge has been and/or will be, damaged thereby.

Amazon contends that M-Edge has failed to assert that any representations were made in a commercial advertisement. Several courts in this Circuit have applied the four-part test set out in Gordon & Breach Science Publishers, S.A. v. America Institute of Physics, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994) to determine whether a statement is commercial advertising or promotion. See, e.g., Huntingdon Life Sciences, Inc., v. Rokke, 978 F. Supp. 662, 665-66 (E.D. Va. 1997)(examining the Gordon & Breach test); Neurotron, Inc. v. American Assoc. of Electrodiagnostic Medicine, 189 F. Supp. 2d 271, 275-76 (D. Md. 2001) (noting that although the test has not been expressly adopted by the Fourth Circuit, it has been relied on by courts within the circuit); Boykin Anchor Col, Inc. v. A.T. & T Corp., 825 F. Supp. 2d 706, 711 (E.D.N.C. 2011) (adopting the Gordon & Breach test).

Under the Gordon & Breach test, a statement constitutes commercial advertising where the statement is

1.  Commercial speech;

2.  By a defendant who is in commercial competition with plaintiff;

3.  For the purpose of influencing consumers to buy defendant's goods or services.

4.  While the representations need not be made in a "classical advertising campaign," the representations must be disseminated sufficiently to the

            relevant purchasing public to
            constitute "advertising" or "promotion"
            within the relevant industry.

Neurotron, 189 F. Supp. 2d at 275 (quoting Gordon & Breach, 859 F. Supp. at 1535–36).

The Court finds the elements of "commercial advertising" adequately pleaded by M-Edge.

The statements on which M-Edge bases its claims constitute commercial speech.  Commercial speech can be "broadly defined as an expression related solely to the economic interests of the speaker and its audience." Id. at 276 (internal quotations omitted).

There are plausible claims that the statements were made to influence consumers and customers to buy Amazon's goods or services.  The purpose of the "not currently available" statement could plausibly be viewed as being to cause the consumer to forego looking for a desired M-Edge product and, instead, buy a competing product offered by Amazon.  The purpose of the "Amazon approval" statement could plausibly be viewed as being to cause the customer to decline to obtain and resell M-Edge products and, instead, to obtain and resell products produced by Amazon or by producers who pay Amazon a share of their sale proceeds.

The facts support a plausible claim that the alleged tortious representations were disseminated – to consumers searching for M-Edge products on the Website and to customers through direct communications – sufficiently to constitute advertising or promotion in context.

The "bottom line" is that the Court finds that M-Edge's factual allegations, viewed in a light most favorable to M-Edge, are sufficient to plausibly allege a false advertising claim.


IV.   CONCLUSION

For the foregoing reasons:

1.   Defendant's Motion to Dismiss [Document 36] is DENIED.

2.   M-Edge shall arrange a telephone conference to be held by January 31, 2013 to discuss the scheduling of further proceedings relating to Counts II, II and IV.


SO ORDERED on Wednesday, January 2, 2013.


                              _____/s/_____
                                Marvin J. Garbis
                            United States District Judge

17