IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

M-EDGE ACCESSORIES LLC,            *

          Plaintiff          *

          vs.                *     CIVIL ACTION NO. MJG-11-3332

AMAZON.COM INC.,                   *

          Defendant          *

*     *     *     *     *     *     *     *     *

MEMORANDUM AND ORDER: CLAIM CONSTRUCTION

In the Second Amended Complaint [Document 33], Plaintiff M-

Edge Accessories LLC ("M-Edge") asserts, in Count I,[1] that

Defendant Amazon.com Inc. ("Amazon") infringed claims in United

States Patent No. 8,047,670 ("the '670 Patent" or "the Patent").

In regard to Count I, the parties have proceeded pursuant to the

Patent Scheduling Order [Document 46].

The Court has considered the materials submitted by the

parties relating to claim construction.  The Court has also held

a hearing regarding claim construction issues (a Markman[2]

hearing) and has had the benefit of the arguments of counsel.

The Court herein presents its claim construction.

---

[1]   In Counts II, III and IV, M-Edge asserts claims for unfair
competition, intentional interference with contracts and
economic relations, and false advertising.
[2]   Markman v. Westview Instruments, Inc., 517 U.S. 370, 390
(1996).

I.    BACKGROUND

A.    The Alleged Invention

The '670 Patent, "Booklight for a Protective Cover of an EReader," discloses a light attached to an EReader – for example, a Kindle – in a manner such that the reader can illuminate the screen.  An embodiment is shown in Figure 3D.



FIG. 3D

B. <u>Claim Terms at Issue</u>

1. <u>Terms Requiring Construction</u>

The parties have identified fifteen claim terms (with variations) that one, or both, contend require judicial construction. For context purposes, it suffices to set forth Claim 1 as a representative claim with the terms at issue therein highlighted:

> 1. A cover assembly for an eReader comprising: a protective cover including: a first and second cover each including, an interior surface and an exterior surface, a spine connecting the first and second covers which are pivotable with respect to each other about the spine, and **a pocket formed between the interior surface and the exterior surface of one of the first and second covers**, wherein the pocket does not traverse the spine and **extends away from the spine** and has **an opening formed at an edge of one of the interior surfaces**, a booklight including, a base with a protrusion, **a substantially flat portion that is disposed within the pocket** formed between the interior surface and the exterior surface of one of the first and second covers, **the substantially flat portion including a slot that receives the protrusion, so that the base is coupled with the substantially flat portion while the base is capable of moving relative to the substantially flat portion**, a light housing assembly having a light source, and **a neck** between the base and the light housing assembly.

'670 Patent 11:21-44 (emphasis added).

2. <u>Allegedly Ambiguous Terms</u>

Amazon contends that four claim terms are indefinite. These are:

3

Claim 4: "The cover assembly of claim 1, wherein the interior surface further includes an axis . . . ."

<u>Id.</u> at 49-51.

Claim 6: "A cover assembly for an eReader, . . . wherein a portion of the interior surface of one of the first and second covers is sized to secure the eReader . . . ."

<u>Id.</u> at 56-61.

Claim 12: "The cover and light assembly according to claim 8, wherein the exterior cover is sized to wrap around an e Reader."

<u>Id.</u> at 12:47-48.

Claim 13: "The cover and light assembly according to claim 8, wherein the interior surface includes at least one mounting device disposed on the interior surface."

<u>Id.</u> at 49-51.


II.  <u>DISCUSSION</u>

   A.  <u>General Principles</u>

      1.  <u>Claim Construction</u>

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude."  <u>Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.</u>, 381 F.3d 1111, 1115 (Fed. Cir. 2004) (citing <u>Aro Mfg., Co. v. Convertible Top Replacement Co.</u>, 365 U.S. 336, 339 (1961)).

The construction of patent claims is a matter for the Court.  <u>Markman</u>, 517 U.S. at 390. However, the Court must

4

construe claim terms as they would be understood, in the context of the patent, by one of ordinary skill in the pertinent art.

As expressed in Phillips v. AWH Corp.:

> We have frequently stated that the words of a claim are generally given their ordinary and customary meaning. We have made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application.
>
> . . . .
>
> Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.

415 F.3d 1303, 1312-13 (Fed. Cir. 2005)(internal quotations omitted).


### 2.   Indefiniteness

Under 35 U.S.C. § 112 (b), claims must "particularly point[] out and distinctly claim[] the subject matter which the inventor [] regards as the invention." A claim that does not comply with this requirement is indefinite. A claim is indefinite only if it is not amenable to claim construction or is "insolubly ambiguous." Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 655 F.3d 1364, 1373 (Fed. Cir. 2011).

B.  Lexicography

Light housing - The Court will, herein, use the term "light housing" to refer to the structure that includes the light bulb [See 40, Figure 1A of the '670 Patent] referred to in the Patent as "light housing assembly."

The Court finds that, as used in the '670 Patent:

- There is no material difference between "coupled," "attached," or "connected."

- There is no material difference between coupled/attached/connected "to" and coupled/attached/connected "with."

- The terms "planar base" and "substantially flat portion of the base" refer to the same structure and the Court shall use the terms interchangeably.

C.  Construction

1.  Pocket

The four independent claims (i.e., Claims 1, 6, 8, and 17) and various dependent claims include as a limitation "a pocket formed between" [two identified surfaces or parts thereof].  The Patent provides an illustration of a pocket used in a disclosed embodiment as structure 120 in Figure 3A.



**FIG. 3A**

Amazon seeks construction of the word "pocket" as "[a]n enclosed pouch with an opening in one end that supports the booklight and allows it to be removably coupled to the protective cover." Joint Claim Constr. Statement, Ex. A, 1 [Document 74-1]. M-Edge contends that the word "pocket" should be construed to mean the structure for retaining a booklight. Id. The Court does not accept fully either party's proposed construction of the word "pocket."

a. Pouch

The Court finds the term "enclosed pouch with an opening at one end" to be an oxymoron since such a "pouch" would not be "enclosed."

Moreover, the '670 Patent states:

> The pocket 120 can include a closed end
> 120b at an opposite end from the open end
> 120a. In other embodiments, both ends of the
> pocket can be open ends.

'670 Patent 5:43-45.

Hence, the word "pocket" as used in the Patent, as relating to a structure with "both" ends open, might be referred to as a "sleeve" but by no means as a "pouch."

### b.    Supports the Booklight

Amazon seeks a construction that the word "pocket" refers to a structure that supports the booklight.

The Court does not find it appropriate to "pack" into its construction of the word "pocket" a requirement that its function be "providing support" for the booklight.  Rather, in the Patent's context, the essential function of the pocket is that, in operation, it have within it the substantially flat portion of the base (planar base).  The Court recognizes that, in the disclosed embodiments, a consequence of the presence of the planar base in the pocket could be described as supporting the booklight.  However, the Court does not find it appropriate to add that function to the definition of the word "pocket."

c.  <u>Removably coupled to the protective cover</u>

Amazon contends that the Patent relates to a booklight that can be inserted into and removed from the pocket.  Where there is an immovable coupling, the cover with booklight would be sold as a single product.

The '670 Patent discloses embodiments in which the planar base is removably coupled with the pocket.  However, there is no disavowal of an embodiment in which the planar base is immovably coupled with the pocket.

The Patent states that "the present invention provides a booklight that is specially designed for use with an eReader, and more particularly, <u>for use with a variety of protective jackets or covers for an eReader</u>." '670 Patent 2:48-51 (emphasis added).  Amazon reads this as indicating that the sole purpose of the invention was to provide a booklight that could be removed from one ebook reader cover and inserted in another. The Court finds this to be an unreasonably restrictive reading.

The quoted statement is most reasonably read as meaning that the <u>invention</u> – not a <u>specific product</u> practicing the invention – could be used with a variety of ebook readers.  For a specific product to be used interchangeably with a variety of ebook readers it would be necessary for each such reader to have the same, or virtually the same, design in regard to pocket placement and size.

Amazon argues that the invention is a booklight separate from the ebook cover to which it is attached. However, as the claims themselves make clear, the invention includes not only the booklight itself – the light housing, the neck and the planar base - but also the pocket and characteristics of the portions of the ebook cover relating to the pocket.

The Court finds no valid reason to "pack" into a construction of the word "pocket," a "removably coupled" limitation.

### d.    Resolution

The Court construes the word "pocket" to mean: "a receptacle in which is received the portion of the base that is referred to as the 'substantially flat portion' in Claims 1 and 6 and as the 'planar base' in Claims 8 and 17."[3]

### 2.    Pocket Formation

The four independent claims (i.e., Claims 1, 6, 8, and 17) and various dependent claims include as a limitation that the pocket be "formed between [two identified surfaces or parts thereof]."

M-Edge seeks a construct of the term "formed between" to mean "located between."

---

[3]    Of course, a device with a "pocket," as so defined, must meet other limitations stated in the respective claims.

In the Joint Claim Construction, Amazon sought to have the term "formed between" construed to require that the pocket be "formed or sewn into or coupled to [a surface]." Joint Claim Constr. Statement, Ex. A, 1 [Document 74-1]. At the hearing, Amazon abandoned this contention, apparently recognizing that by use of the words "or sewn" the Court would not be reducing, and may be expanding, the scope of the claim.

At the hearing, Amazon changed its proposed construction of "formed between" to be formed "on the interior surface of one of the first or second covers or coupled to the interior surface of one of the first and second covers." Hr'g Tr. 95.

The Court notes, but rejects, Amazon's claim differentiation argument that accepting M-Edge's construction would mean that dependent Claim 5 would not depend from Claim 1. Claim 5 states: "The cover assembly of claim 1, wherein the pocket is coupled to the interior surface." '670 Patent 11:54-55. Certainly a pocket coupled to the interior surface would be located between the two identified surfaces. Claim 5 is, as is appropriate for a dependent claim, a bit narrower – but included within – independent Claim 1.

The Court concludes that the construction of the term "formed between" is "located between."

3. <u>Base Coupling</u>

The four independent claims (Claims 1, 6, 8, and 17) and various dependent claims include as a limitation that the substantially flat portion (planar base) is movably coupled to the base - using somewhat different expressions that are not materially different.[4]

Amazon contends that the Court must construe the "movably coupled" limitation as including a requirement that the base "rotates or swivels" relative to the substantially flat portion. At the hearing, Amazon conceded that it was using the words "rotate" and "swivel" "almost" synonymously but did not specify any difference warranting the "almost" qualification.

While the Patent discloses embodiments in which the base moves relative to the substantially flat portion by rotating or swiveling, there is not a statement in the Patent that this is the only possible embodiment of the invention claimed. Nor does the current state of the record[5] suffice to enable the Court to

_____

[4]    Claim 1 – "the base is capable of moving relative to the substantially flat portion . . . ."  '670 Patent 11:40-43. Claim 6 – "the base is movably coupled with the substantially flat portion . . . ."  <u>Id.</u> at 12:10-11. Claim 8 – "the movable base is movably coupled to the planar base . . . ."  <u>Id.</u> at 32-33. Claim 17 – "the movable base is movably coupled to the elongated planar base . . . ."  <u>Id.</u> at 14:4-5.

[5]    In view of the discussion at the hearing, the Court is not foreclosing the possibility that it might reconsider the matter if evidence established that the invention could not be enabled

12

find that there could be no possible embodiment of the invention – meeting all limitations – that did not have the base and planar base coupled so as to permit any movement other than rotation or swiveling.

On the current record, the Court construes:

- The term in Claim 1 "capable of moving relative to the substantially flat portion" to mean "capable of moving in any manner relative to the substantially flat portion."

- The term in Claims 6, 8, and 17 "movably coupled to [or with] the substantially flat portion [planar base, elongated planar base]" to mean "attached to the substantially flat portion [planar base, elongated planar base] so as to enable relative movement of any type."

    4.   <u>Neck</u>

The four independent claims (Claims 1, 6, 8, and 17) include as a limitation that there be a "neck between the base and the light housing assembly" [Claims 1, 6] or a "neck extending from the movable base" [Claims 8, 17]. Dependent Claim 2 also references the neck.

Amazon seeks a construction that adds a limitation that the neck be "manipulatable." M-Edge seeks a construction that the word "neck" simply means a structure – any structure – that connects the light housing to the base.

_____

other than with the movement between the base and planar being rotational or swiveling.

The '670 Patent discloses an embodiment in which the neck is not rigid.

The Court does not find, as Amazon contends, that the invention could not be enabled with a rigid neck because the user could not control the direction of the light. It is true that the Patent discloses embodiments with necks that the user adjusts to direct the light on the reading surface. However, the invention could be practiced with a rigid neck and an adjustable light housing or an adjustable lens.

Moreover, the Patent states that

> the light assembly housing 40 can be moved
> into a position to illuminate the display of
> the eReader in several ways. For example,  .
> . . by flexing or bending the manipulatable
> neck 30 of the booklight while the booklight
> is in the stored position. Additionally, as
> shown in FIG. 3B, the booklight can be
> pivoted or swiveled about the base tab 20 .
> . . .

'670 Patent 5:59-66.

However, the context of the Patent clearly indicates that the claimed invention could not be practiced if the neck were completely immovable, i.e., in a fixed position. The light housing, connected to the base by the neck, must be moved into a position to illuminate the display.

Accordingly, the Court construes "neck" to mean a structure that connects the light housing to the base that is

manipulatable so as to be capable of changing the position of the light housing.

###### 5.   Flexible Neck

M-Edge seeks a construction that a "flexible neck" is a neck that "may be moved between a plurality of positions." Joint Claim Constr. Statement, Ex. A, 5 [Document 74-1].  Amazon seeks a construction that a "flexible neck" means one that "is capable of being flexed into a plurality of positions <u>and maintaining said positions</u>."  <u>Id.</u> (emphasis added).

Claim 2 states only: "wherein the neck is a flexible neck." '670 Patent 11:45-46.  No additional limitation regarding the type of flexibility is included.

The specification includes various embodiments that indicate, for example, that:

> The flexible neck 30 then can be moved into
> an optimal position to focus the light and
> illuminate the display of the eReader by
> flexing or bending the manipulatable neck 30
> of the booklight while the booklight is in
> the open (i.e., pivoted or swiveled)
> position.  The booklight can be pivoted or
> swiveled into numerous positions, depending
> on the desired position of the light housing
> assembly for illuminating the display of the
> eReader.

'670 Patent 6:4-12.

The summary of the invention also includes a reference to the flexible neck: "The present invention also provides a

booklight having a flexible neck such that the user can easily and conveniently direct the light toward the screen of the eReader, for example, at an optimum angle to reduce or prevent glare . . . ." Id. at 2:59-62.

In Column 7, describing Figures 12A-12C, the manipulatable neck is described as one that "can be a flexible and resilient[6] neck." Id. at 7:62-63. The Patent then states that the neck is capable of retaining the manipulated position "such that the light assembly housing 40 can be placed in an optimal position for illuminating the display of the eReader." Id. at 7:64-67.

These descriptions relate to particular embodiments of the invention – indicating that the purpose of being flexible is so the user can position the light optimally. One description states that the neck, when flexed to a position, would maintain that position, but that limitation is not carried over into the claim. In fact, the prosecution history reflects that in the course of prosecution, the language "wherein the manipulatable neck retains a manipulated position" was removed. See Pl.'s Resp. Br. 13 [Document 78].

The ordinary definition of "flexible" does not carry with it the concept of retaining a particular position. The dictionary definition simply states that "flexible" means "able

---

[6]     Use of the word "resilient" supports a construction whereby the neck would return to its original position when flexed.

to bend without breaking, not stiff or rigid, easily bent, pliant."  Websters New World Dictionary, Third College Edition 516 (1988).

It is apparent that the invention can be practiced with a neck that is flexible but not capable of being moved into a plurality of retained positions.  As discussed above, the lighting effect of the invention can be achieved by a rigid neck with an adjustable light housing or lens.  It can also be achieved with a flexible neck that remains in a fixed position so long as there is an adjustable light housing or lens to direct the light as desired or, perhaps less desirably but still functional, by the user's holding the neck in position.

The Court concludes that the term "flexible neck" in Claim 2 means "not rigid."


### 6.   Coupled to the Interior Surface

Independent Claims 1, 6, and 8 require a pocket formed between an interior surface and an exterior surface.  Dependent claims 5, 7, and 16 add to their respective independent claims the requirement that "the pocket is coupled to the interior surface."  '670 Patent 2:59-65.

M-Edge contends that the "coupled to" requirement means that "the pocket is attached to the interior surface."  Amazon, perhaps straining to find an issue where none may exist, seeks a

construction that requires the pocket to be coupled to the interior surface "by an adhering means."

The parties do not present a scenario, and none comes to mind, in which a pocket could be coupled to an interior surface without some "adhering means."  There would appear to be no meaningful limitation added by virtue of inserting an "adhering means" requirement.  However, to the extent that the words "by an adhering means" would narrow the "coupled to" limitation, the Court finds no valid basis to narrow it.

Thus, the Court construes the term "coupled to" to mean "attached to."


## 7.  Formed at an Edge

Independent Claims 1 and 8 have a location requirement regarding the pocket opening, stating:

> Claim 1 – "pocket . . . has an opening
> formed at an edge of one of the interior
> surfaces . . . ."  '670 Patent 11:28-32.

> Claim 8 - "pocket . . . having an opening
> formed at an edge of the interior surface .
> . . ."  '670 Patent 12:23-27.

M-Edge takes the position that if a construction is needed, the phrase means that "the pocket has an opening located at an edge of the interior surface."  Joint Claim Constr. Statement, Ex. A, 6 [Document 74-1].  Amazon proposes: "The pocket has its

opening formed at an edge of one of the interior surfaces
adjacent to the spine." Id.

Amazon seeks to add to the stated limitation that the
opening is formed "at an edge of one of the interior surfaces
adjacent to the spine" because, it argues, "the '670 Patent
describes one of the characteristics of 'the present invention'
as providing a removably attached booklight that 'can be easily
collapsed and stored in a protective jacket or cover of the
eReader, thereby providing a booklight that is easily and
conveniently carried or transported along with the eReader.'"
Defs.' Resp. Claim Constr. Br. 17-18 [Document 79]. Thus,
Amazon argues, the only way to achieve this result is by means
of a pocket opening located adjacent to the spine.

It may be true that no disclosed embodiment could achieve
this result without an opening that is located at an edge of an
interior surface adjacent to the spine. However, the Patent
does not limit the claimed invention to the specific disclosed
embodiments. See Phillips, 415 F.3d at 1323 ("although the
specification often describes very specific embodiments of the
invention, we have repeatedly warned against confining the
claims to those embodiments"). Moreover, the Patent states:

> An exemplary embodiment of a protective
> cover 100 for an eReader is illustrated in
> FIGS. 3A-3D. . . . The pocket 120 can be
> formed, for example, at an upper end of the
> interior surface of the rear cover 104 such

> that the book light can be positioned to
> extend from the upper end of the spine
> toward the lower end of the spine of the
> cover. In other embodiments, the pocket 120
> can be formed at other locations on the
> interior of the rear cover 104, or at
> locations on the interior of the front cover
> 102. The pocket 120 can be formed on the
> same cover as the mounting system or on a
> different cover than the cover having the
> mounting system.

'670 Patent 5:21-36.

The Court does not find it appropriate to add to the pocket opening locational limitation, the requirement that the pocket is located adjacent to the spine.

Accordingly, the Court construes the term "has an opening formed at an edge of one of the interior surfaces" [Claim 1] and "having an opening formed at an edge of the interior surface" [Claim 8] as requiring that the pocket opening be formed at an edge of an interior surface – but not necessarily adjacent to the spine.

### 8. Extends Away From the Spine

Independent Claim 1 has a limitation requiring that "the pocket does not traverse the spine and extends away from the spine . . . ." '670 Patent 11:30-31.

Amazon contended, in the Claim Construction Chart, that the term should be construed to mean that "[t]he pocket has its opening at least partially disposed toward the spine and the

pocket extends toward the exterior edge of the protective cover."  Joint Claim Constr. Statement, Ex. A, 6 [Document 74-1].

M-Edge took the position that no construction was necessary and that the term would have its ordinary meaning.  However, the parties materially differ as to the ordinary meaning of the term "extends away from the spine."

M-Edge seeks to have the term "extends away from the spine" construed to mean that it extends in a direction that is not parallel to the spine. Hr'g Tr. 159-60.  The Court does not agree with this proposed construction.

Figure 3A shows a pocket 120 with an open end 120a adjacent to the spine into which the planar base is inserted and a closed end 120b at the opposite end.



Fig 3A

The figure illustrates a pocket extending away from the spine consistent with the limitation in the claim.

The Patent does not use the word "parallel" at all. Moreover, a pocket that is parallel to the spine neither extends toward, or away from, the spine. Thus the M-Edge proposed construction would ignore the express claim language making it critical for the pocket to extend away from the spine.

If the pocket shown in Figure 3A had its open end and closed end reversed, the pocket would extend toward the spine and not away from the spine because an item inserted in the pocket would move toward the spine. Yet, the pocket would not be parallel to the spine and thus, according to the M-Edge proposed construction, would be considered as extending away from the spine.

Furthermore, the claim states "the pocket does not traverse the spine and extends away from the spine . . . ." '670 Patent 11:30-31 (emphasis added). Using the M-Edge construction, the phrase would mean that the pocket does not traverse the spine and is not parallel to the spine. However, the word "parallel" means "extending in the same direction," and to traverse means "to cross" or "extend over, across or through." See Webster's New World Dictionary, Third College Edition 979, 1423 (1988). Thus, by definition, a pocket that is parallel to the spine would not traverse it. Moreover, a pocket that traverses the

spine would have a portion that extend towards and a portion
that extends away from the spine.  To substitute "not parallel
to the spine" for "extends away from the spine" would render the
"traverse" limitation unnecessary.

The Court construes the term "extends away from the spine"
to mean that "the direction of extension, starting from the open
end of the pocket into which the planar base is inserted, is
away from the spine."


9.  <u>Elongated Planar Base</u>

Independent Claim 17 refers to the structure identified in
other claims as the "substantially flat portion" or "planar
base" as the "elongated planar base."

M-Edge contends that no construction is required but, if
there would be one, proposes a construction that would delete
the "elongated" limitation in Claim 17.  Amazon seeks a
construction of the term "elongated planar base" as "[a] planar
base with its length substantially greater than its width."[7]
Joint Claim Constr. Statement, Ex. A, 6 [Document 74-1].

The Court doubts that there will be an issue in which the
"elongated" limitation of Claim 17 will be material.
Nevertheless, the Court construes "elongated planar base" to

_____

[7]    A cynic might note that such a definition leaves room for
future quibbling regarding which dimension of a rectangle should
be considered the width and which the length.

mean "a planar base of a shape that has a substantial difference between its width and length, such as does a rectangle compared to a square and an oval compared to a circle."

### 10. Disposed Within

The four independent claims (Claims 1, 6, 8, and 17) include as a limitation that the planar base be disposed within the pocket.[8]

M-Edge contends that the term "a substantially flat portion [planar base/elongated planar base] that is disposed within the pocket [between the two opposing surfaces of the pocket]" in Claims 1, 6, 8, and 17, should be given its plain and ordinary meaning, which requires no further construction. Joint Claim Constr. Statement, Ex. A, 6-7 [Document 74-1].

Amazon proposes a construction that states: "A substantially flat portion [planar base/elongated planar base] that is removably disposed with[in] the pocket [between the two opposing surfaces of the pocket]. Id. Thus, Amazon seeks to

---

[8]    Claim 1 – "a substantially flat portion that is disposed within the pocket formed between the interior surface and the exterior surface . . . ." '670 Patent 11:35-37.
Claim 6 – "a substantially flat portion that is disposed within the pocket . . . ." Id. at 12:7-8.
Claim 8 – "a planar base disposed within the pocket . . . ." Id. at 12:29.
Claim 17 – "an elongated planar base disposed within the pocket . . . ." Id. at 13:10.

add the limitation that the planar base is removably disposed within the pocket.

As discussed above in regard to the construction of "pocket," the Court does not construe the Patent claims as requiring removable coupling or disposition of the planar base with, or in, the pocket.

The Court construes the term "disposed within" to mean "contained within."


11.  <u>Sized to be Received</u>

Independent Claim 17 has a limitation requiring that the "elongated planar base [is] sized to be received between the two opposing surfaces of the pocket and the at least one opening at the end of the two opposing surfaces."  '670 Patent 13:12-15.

In the Joint Claim Construction, Amazon sought a construction that the elongated planar base is "sized to be inserted between the two opposing surfaces of the pocket by inserting it through the at least one opening at the end of the two opposing surfaces."  Joint Claim Constr. Statement, Ex. A, 6-7 [Document 74-1].

As discussed at the hearing, the Court finds no reason to render the term "sized to be received" complicated.  Therefore, the Court construes the term "sized to be received" to mean "of a size that will enable it to fit."

D.  <u>Definiteness</u>

1.  <u>Interior Surface Includes an Axis</u>

Dependent Claim 4 states: "The cover assembly of claim 1, wherein the interior surface further includes an axis and the interior surface is bendable around the axis, and wherein the pocket is formed at an angle with respect to the axis."  '670 Patent 11:49-53.

Amazon contends that the reference to the interior surface lacks a proper antecedent basis and thus is indefinite.  M-Edge contends that the term refers collectively to the interior surface of the first cover (shown in Figure 3A element 102) and the interior surface of the second cover (shown in Figure 3A element 104) as described in Claim 1.

Claim 1, however, refers to two separate interior surfaces: "a first and second cover each including, an interior surface and an exterior surface," with "a spine connecting the first and second covers."  '670 Patent 11:23-25.  A single interior surface is not described in Claim 1, nor shown in Figure 3A as M-Edge contends.  Additionally, the Court does not find any structure that could be the "axis" referred to in Claim 4 other than the spine.

As stated in the Patent specification, referring to Figures 3A-3D:

> a spine connecting the first cover 104 to
> the second cover 102, wherein the first
> cover 104 and the second cover [102[9]] are
> pivotable with respect [to] each other about
> the spine

'670 Patent 9:37-40.

Thus, the term "wherein the interior surface further includes an axis and the interior surface is bendable around the axis" is indefinite. Accordingly, the Court finds dependent Claim 4 to be "insolubly ambiguous,"[10] indefinite and therefore void.

### 2. Sized to Secure the eReader

Independent Claim 6 includes a limitation that "a portion of the interior surface of one of the first and second covers is sized to secure the eReader." '670 Patent 11:59-61.

Amazon contends that this limitation is indefinite. The Court finds the limitation clear. The cover simply must be of a size to hold the eReader that it covers.

### 3. Exterior Cover Sized to Wrap Around

Amazon contends that this limitation is indefinite because the term "exterior cover" has no antecedent basis. Claim 8

---

[9]     Due to an obvious typographical error, referred to as "second cover 104" in the Patent.
[10]    Certainly, the claim could have been drafted to state what M-Edge contends it should be construed to mean. But such a claim would not depend on Claim 1 since the spine would be an axis.

includes a reference to "a protective cover including, a first and second cover" each of which covers include an "exterior surface and an interior surface." '670 Patent 12:18-20.  There is no reference to an "exterior cover."

However, in context, it is most reasonable to consider the term "exterior cover" in Claim 12 to be a reference to the term "protective cover" in Claim 8.  Hence, dependent Claim 12 can be construed to mean that the protective cover in Claim 8 must be of a size to wrap around the eReader that it covers.

Accordingly, the Court does not find dependent Claim 12 to be indefinite.

### 4.  Mounting Device

Dependent Claim 13 states: "The cover and light assembly according to claim 8, wherein the interior surface includes at least one mounting device disposed on the interior surface." '670 Patent 12:49-51.

Amazon contends that this limitation is indefinite. Specifically, it is asserted to be indefinite because the claim does not identify which interior surface is referenced therein.

 The Court finds the limitation adequately clear in context.  The Patent refers to a mounting device utilized to secure the eReader to the cover.  See, e.g., '670 Patent 2:28-30; 9:40-41; 9:62-10:7.  Such a mounting device would, necessarily,

be on the particular interior surface that would contain the

eReader being secured.


III. <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes the

following with regard to the construction of the claim terms at

issue:

    A.   <u>Construction</u>

       1.   In Claims 1, 4, 5, 6, 7, 8, 11, 14, 15, 16, and 17, the term "pocket" means "a receptacle in which is received the portion of the base that is referred to as the 'substantially flat portion' in Claims 1 and 6 and as the 'planar base' in Claims 8 and 17."

       2.   In Claims 1, 6, 8, 11, 14, and 17, the term "formed between" means "located between."

       3.   Base Coupling:

          a.   The term in Claim 1 "capable of moving relative to the substantially flat portion" means "capable of moving in any manner relative to the substantially flat portion."

          b.   The term in Claims 6, 8, and 17 "movably coupled to [or with] the substantially flat portion [planar base, elongated planar base]" means "attached to the substantially flat portion [planar base, elongated planar base] so as to enable relative movement of any type."

       4.   In Claims 1, 2, 6, 8, and 17, the term "neck" means "a structure that connects the light housing to the base that is manipulatable so as to be capable of changing the position of the light housing."

5.   The term "flexible neck" in Claim 2 means "not rigid."

6.   In Claims 5, 7, and 16, the term "coupled to" means "attached to."

7.   The term "has an opening formed at an edge of one of the interior surfaces" [Claim 1] and "having an opening formed at an edge of the interior surface" [Claim 8] means that the pocket opening must be formed at an edge of an interior surface – but not necessarily adjacent to the spine.

8.   The term "extends away from the spine" in Claim 1 means that "the direction of extension, starting from the open end of the pocket into which the planar base is inserted, is away from the spine."

9.   The term "elongated planar base" in Claim 17 means "a planar base of a shape that has a substantial difference between its width and length, such as does a rectangle compared to a square and an oval compared to a circle."

10.  In Claims 1, 6, 8, and 17, the term "disposed within" means "contained within."

11.  The term "sized to be received" in Claim 17 means "of a size that will enable it to fit."

B.   <u>Indefiniteness</u>

1.   The Court finds dependent Claim 4 void for indefiniteness.

2.   The Court does not find any other claim void for indefiniteness.

SO ORDERED, on <u>Thursday, November 21, 2013</u>.

_____/s/_____
Marvin J. Garbis
United States District Judge